IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CARRERA, *et al*, | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. JKB-1:17-cv-03066 |
| E.M.D. Sales, Inc., *et al*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

This suit arises out of claims of denial of overtime compensation levied by Plaintiffs Faustino Sanchez Carrera, Jesus Davis Muro, and Gervacio Magdaleno, (collectively, the "Plaintiffs") against Defendants E.M.D. Sales, Inc. ("EMD"), Elda M. Devarie, and E&R Sales and Marketing Services, Inc., (collectively, the "Defendants"). The case has been referred to me for resolution of all discovery and related scheduling matters pursuant to 28 U.S.C. § 636 and Local Rule 301. (ECF No. 28).

For the reasons stated below, Plaintiffs' requests (ECF Nos. 65 and 67) are GRANTED in part, DEFERRED PENDING HEARING in part, and DENIED in part, and Plaintiffs' request for a hearing is GRANTED in part.

**I. BACKGROUND**

To provide a proper frame of reference, this case involves three Plaintiffs alleging that their employer, EMD, violated the Fair Labor Standards Act ("FLSA") 29 U.S.C. 201-216(B) by misclassifying them as "exempt" employees and, in so doing, failed to pay them overtime and, in some instances, the applicable minimum wage beginning in 2014. Plaintiffs serviced various grocery store customers on behalf of EMD, a food distributor. Defendants contend that Plaintiffs

acted as EMD's Sales Representatives for the customers they serviced such that they were exempt from the FLSA overtime and minimum wage requirements and could instead be paid strictly on commission earned on the amount of sales to each assigned grocery store. Plaintiffs claim that, notwithstanding their title of "sales representative," their job duties did not include "sales" to any appreciable degree, and instead involved merely re-filling customer orders (based on existing agreements negotiated by more senior EMD employees), and re-stocking customer shelves as inventory was depleted.

Based on these issues in dispute, relevant discovery could be expected to center on: (1) qualitative and quantitative aspects of Plaintiffs' day-to-day activities to determine whether they were properly classified as exempt sales employees; (2) the number of hours Plaintiffs worked in excess of 40 to assess any overtime claim in the event overtime was determined to be applicable; and, (3) the amount of compensation Plaintiffs received to determine damages in the event they are found to be mis-classified and overtime/minimum wage calculations needed to be made.[1] As importantly, discovery must be proportional to the needs of the case, and must be "construed, administered and employed" by the court and the parties to secure the "just, speedy and inexpensive determination of every action and proceeding." Fed. Rs. Civ. Proc. 1 and 26(b)(2).

Notwithstanding the relatively straightforward nature of this claim, Plaintiffs have propounded extensive and far-reaching written discovery. For their part, until fairly recently, Defendants' chief discovery response has been to object. Not surprisingly given those dynamics, there have been many discovery disputes in this case, as well as telephone conferences and a hearing to attempt resolution of them.

---

[1] The Court is not aware of any claim that commissions have been wrongfully withheld in the event that Plaintiffs are determined to be exempt employees for FLSA purposes.

An extensive hearing was held on August 7, 2018 addressing what the Court assumed were the remaining areas of disagreement. (ECF No. 53). Additionally, the Court conducted a follow-up telephone conference on those issues with the parties on September 18, 2018, giving further guidance and instructing the parties to meet and confer in light of that guidance. (ECF No. 62). As stated by the Court at that time:

> In the unlikely event that the parties cannot successfully work through these issues on their own, the parties may submit letters to the Court by October 12, 2018 of no more than five pages, outlining any remaining areas of dispute.

(*Id*. at 3).[2] The Court also ordered that no further written discovery could be propounded absent mutual consent or Court approval. (*Id*.).

Unfortunately, that has proven to be wishful thinking. Now pending before the Court is a letter from Plaintiffs outlining various shortcomings in Defendants' promised production, outlining remaining areas of disagreement, and, in the Court's view, in some areas expanding previous disagreements well beyond the Court's expectation. (ECF No. 65). Defendants filed a response to that letter. (ECF No. 66). Plaintiffs filed a second letter, containing a rebuttal to Defendants' position and adding yet more areas of disagreement. (ECF No. 67). Plaintiffs also request an another 90-day extension of the December 6, 2018 discovery deadline to accommodate the production of the additional information they seek, as well as to conduct depositions. Plaintiffs have also requested a hearing.

## II. MATTERS FOR WHICH NO HEARING IS NECESSARY

The Court finds no hearing is necessary to address the issues set forth below.

### A. Personnel Files/Evaluations; Paystubs; Stores Opened; and Emails Without Content

---

[2] That deadline was subsequently extended until October 16, 2018 at the parties' request. (ECF Nos. 63 & 64.)

3

In one manner or another, Plaintiffs argue that the Defendants failed to completely produce all personnel files/evaluations, paystubs, and stores opened. Additionally, at least 36,000 emails and attachments were produced without content. For each request, Defendants responded that they are still in the process of finding and retaining responsive documents. As for the email, Defendants recollected them and are preparing them for reproduction. Thus, Defense Counsel is instructed to complete the production of all responsive documents to these requests by December 17, 2018.

### B. Timeframe of Relevant Discovery

Plaintiffs argue that because two of the current plaintiffs are still employed by the Defendants, the discovery timeframe should continue until the date of trial. The Defendants are already under a general obligation to do so if a previous discovery response is incorrect or incomplete in some *material* respect pursuant to Rule 26(e)(1) of the Federal Rules of Civil Procedure (emphasis added). Thus, for some discovery requests, supplementation to the date of trial might be necessary because additional data would be necessary for a proper understanding of a relevant issue. For others, information provided through the date of production might well be sufficient if the incremental value of additional data through the date of trial would not change the substance of a response in a material way.

By way of example only, to the extent information was produced that goes to the general question of whether Plaintiffs spent their time on actual sales versus restocking, given the amount of information already produced (or to be produced) on this issue, the Court would not expect that such information would need to be continually updated from the date of production through the date of trial unless Plaintiffs' job requirements changed in some material respect. Plaintiffs have more than a sufficient sample size to make their argument. By contrast, to the extent one or more of the Plaintiffs continues to work for EMD under the challenged "exempt/non-exempt"

classification, supplementation of wage payment information to the date of trial might be necessary to allow for an updated calculation of damages.

## C. Delivery Schedules/Routes

Plaintiffs request the production of delivery schedules for EMD drivers and documents showing Plaintiffs' routes. Defendants assert that employees would make their own schedules, therefore no such schedules or routes exist. Plaintiffs counter that such routes exist evidenced by the existence of Power Analyzer data fields such as "Route ID" and a spreadsheet attached to their Reply as Exhibit A. (ECF No. 67 at 6-12). The Court does not see that Plaintiffs' supplemental argument contradicts Defendants as the attachment to their Reply appears to be simply a list of their assigned stores. The Court also cannot order Defendants to produce documents that they have represented do not exist. (The Court will address the "Route ID" Power Analyzer field below in its broader discussion of Power Analyzer data.)

## D. Distribution/Service Agreements

Plaintiffs ask this Court to order the production of Distribution and Service Agreements between EMD and all of its customers, two of which they suspect have been wrongfully withheld. Defendants argue that this information is irrelevant to any claim or defense and has no bearing on the claims or defenses at issue. The Court agrees and will not order production.

## E. Planograms

Plaintiffs also request the planograms for any store serviced by a plaintiff. Defendants counter that all such planograms in their possession were produced. The Court cannot order Defendants to produce documents that they have represented do not exist.

## F. Text Messages

Plaintiffs assert that the Parties agreed to ascertain text message authorship on a case by case basis by either: (1) formal interrogatory; (2) questioning during deposition; or (3) informal review where Defense Counsel will ask the custodian directly following a specific request by the Plaintiffs. Defendants assert that they did not agree to the use of formal interrogatories, but did further suggest ascertaining identities by Plaintiffs purchasing another tool for the collection and production of the text messages or engaging a vendor to do the same.

The Court will order the parties to resolve this dispute by one of four methods: (1) questioning during deposition; (2) the proposed informal review; (3) use of another tool at Plaintiffs' expense; or (4) engagement of a vendor to collect the text messages at Plaintiffs' expense. The Parties have until December 17, 2019 to complete the mutually chosen method.

## III. MATTERS TO BE ADDRESSED FURTHER AT HEARING

### A. Discovery Extension

The Court will decide at the hearing the extent of any discovery extension (except as specifically ordered above) necessary to resolve the remaining open items identified below. The Court is not otherwise inclined to extend discovery, but will hear argument on that issue at the hearing.

### B. Depositions

The Parties are ordered to cooperatively schedule depositions. To the extent that Defendants have last known contact information for former employees that Plaintiffs have otherwise not been able to locate, they should provide it to Plaintiffs. To the extent Plaintiffs notice depositions of unrepresented parties, the notice and its service should conform to the Federal Rules, should inform the deponent of the right to retain counsel, and should provide a contact number for Plaintiffs' counsel so that deposition logistics can be worked out prior to the deposition.

The Parties are to present a mutually-acceptable schedule for any remaining depositions at the hearing. The parties should aim to schedule and complete the depositions as soon as possible. The Court will consider any discovery extension necessary to complete the depositions at the hearing.

### C. Power Analyzer, Retalix, and Commission Reports

The Court is disappointed that it is again called upon to address this issue that has been the subject of dispute since at least May of 2018 when the Court ordered the parties to meet and confer regarding this information and reiterated in its August 7, 2018 and September 18, 2018 orders. (ECF Nos. 38, 53 & 62). It is the Court's understanding that Power Analyzer and Retalix are business computer systems maintained by EMD that track customer order and sales information. They are not litigation support systems and not infinitely flexible in the type and format of information available. Additionally, they understandably include business information that would be either only marginally relevant or completely irrelevant to this litigation. Plaintiffs have continually sought complete access to these systems so that they might see all of the various types of information maintained in these systems and then pick and choose fields that might have information related to their clients' activities while employed by Defendants.

Defendants have been reluctant to provide such unfettered access, not only to preserve their private business information but also because they (understandably) contend that it excuses Plaintiffs have having to formulate appropriate discovery requests, instead allowing them to essentially rifle through EMD's electronic filing cabinet to see what might peak their interest.

It was with these issues in mind that the Court directed the parties to confer regarding what type of information Plaintiffs were seeking so that Defendants could search for it and produce it in an efficient and cost-effective way. To this end, Defendants have produced information in the

form of 161 Excel Spreadsheets for each of its grocery store customers for which any of the Plaintiffs completed a sale during the relevant period that details (1) all merchandise sold and returned; (2) invoice and delivery dates; (3) invoice number for sales and credits; (4) the sales person credited with the sale; (5) the store ID; (6) the item sold and size; (7) price; (8) returns; (9) credits; and (10) quantity shipped. Defendants estimate that the time expended to create, format, and export this information into Excel (so that it could easily be manipulated by Plaintiffs) was between 40 and 80 hours.

Additionally, Defendants have produced Monthly Commission Reports for each Plaintiff, summarizing (1) dollar amount of merchandise sold by the person; (2) commission percentages on sales; (3) gross commission; (4) draw amounts; (5) commissions earned net of draw; and (6) commissions per pack out as designated by union agreement. Defendants further detail that spreadsheets were produced for each Plaintiff with data fields for: (1) sales rep ID; (2) invoice and delivery date; (3) invoice number; (4) store ID; (5) price; (6) per item cost of goods; (7) landed per item cost of goods; and (8) gross margin from sales. Finally, Defendants have produced an even more granular "Detailed Commission Spreadsheet" that includes the salesperson's name, invoice/delivery date, customer name, price, EMD's adjusted cost per item, and gross margin.[3]

Notwithstanding this, Plaintiffs are again requesting that they be provided with their own access to Defendants' computer systems so that they might conduct their own searches that, by the Court's count, would include an additional 50-plus "fields" of data. Defendants have challenged this based both on a logistical and relevancy basis. Now, the Court is called upon to decipher the meaning and relevance of dozens of fields that Plaintiffs suspect may have relevant information that can be produced in manner not disproportionate to the needs of the case.

---

[3] Defendants have separately produced payroll data for each Plaintiff, as well as data submitted from their hand-held electronic re-ordering devices.

It is far from clear to the Court after a review of the parties' respective submissions whether the numerous fields now requested by Plaintiffs meet the relevancy and proportionality requirements Rule 26 of the Federal Rules of Civil Procedure, nor whether an order to produce the information would be consistent with this Court's (and the Parties') obligations pursuant to Rule 1. The Court also remains unclear as to the capability of Defendants' computer systems to generate these additional fields (or at least to generate them in the same report). The Court is not prepared to rule on an issue as to which it does not have a full understanding. Accordingly, at the hearing on this matter, the parties should be prepared to elaborate on the particular fields sought by Plaintiffs and whether such fields are likely to yield important information (or are even routinely populated) not already provided in some other form. Additionally, Defendants should be prepared to speak to whether there is a less labor-intensive method for providing such information should the Court order it (e.g., if Power Analyzer can generate a report in its own format, without the requirement that it then be converted to Excel). The Defendants should be prepared to have the person most able to answer specific questions about the fields and system capability at the hearing if such knowledge is beyond that of counsel.

**IV.     ORDER**

For the foregoing reasons, Plaintiffs' requests (ECF Nos. 65 and 67) are GRANTED in part, DEFERRED PENDING HEARING in part, and DENIED in part, and Plaintiffs' request for a hearing is GRANTED in part. The HEARING is scheduled for December 5, 2018 at 3:00 p.m.. The specific courtroom will be announced.


Dated: November 19, 2018                         /s/
                                                J. Mark Coulson
                                                United States Magistrate Judge