**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

FAUSTINO SANCHEZ CARRERA,
*et al.*,   *

    Plaintiffs,

    v.   *   CIVIL NO. JKB-17-3066

EMD SALES, INC., *et al.*,   *

    Defendants.   *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## **MEMORANDUM**

Plaintiffs Faustino Sanchez Carrera, Magdaleno Gervacio, and Jesus David Muro, current and former sales representatives at E.M.D. Sales, Inc. ("EMD"), brought this suit against Defendants EMD and EMD Chief Executive Officer Elda M. Devarie for failing to pay them overtime wages, as required by the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* (the "FLSA" or the "Act"). Defendants argued that Plaintiffs constituted outside salespeople under the FLSA and were accordingly exempt from the statute's wage and overtime requirements. Upon consideration of all the evidence presented at a two-week bench trial in March 2021, the Court found that Plaintiffs did not qualify as exempt outside salespeople and that Defendants' failure to pay them overtime wages violated the FLSA. (*See* ECF No. 219.)

In an Order issued on May 13, 2021, the Court found Defendants jointly and severally liable for Plaintiffs' unpaid withheld minimum and overtime wages, plus liquidated damages under 29 U.S.C. § 216(b). (*See* ECF No. 239.) Defendants now move to alter or amend the portion of the Court's Order awarding liquidated damages. (Mot. Amend, ECF No. 242.) Defendants'

motion is ripe, and no hearing is required.  *See* Local Rule 105.6 (D. Md. 2021).  For the reasons set forth below, Defendants' Motion to Amend (ECF No. 242) will be denied.

### I.   *Background[1]*

Founded by Ms. Devarie in 1995 and incorporated in 1997, EMD distributes Latin American, Caribbean, and Asian food products to chain and independent grocery stores in the Washington, D.C. metropolitan area.  As a direct store delivery vendor, EMD delivers its products to stores and provides supplementary services, including stocking and conditioning shelves, at those stores.  Mr. Carrera and Mr. Gervacio are current sales representatives at EMD, and Mr. Muro was a sales representative at EMD until August 2017.

By all accounts, sales representatives spend most of their time outside of EMD's main office, servicing stores on their preassigned routes.  EMD assigns each of its sales representatives a sales route comprised of both chain and independent stores and provides each with a personal digital assistant device, which allows them to place orders for EMD products.  Sales representatives are not paid an hourly wage.  Instead, pursuant to collective bargaining agreements negotiated by the United Food and Commercial Works Union, Local 400 (the "Union") and EMD, sales representatives' compensation is based entirely on commissions on their sales of EMD products.

The central question litigated at trial was whether sales representatives' primary duty consisted of making sales of EMD products.  If making sales was their primary duty, the sales representatives would constitute outside salespeople under the FLSA's exemption for wage and overtime requirements.  *See* 29 C.F.R. § 541.500.  At trial, Plaintiffs testified that sales representatives' primary responsibility is essentially inventory management, with daily tasks

---

[1] The key findings of fact and conclusions of law are set forth in more detail in the Court's Memorandum Opinion from March 19, 2021.  (ECF No. 219.)

2

including re-stocking, replenishing depleted products, removing damaged and expired items from the shelves, and issuing credits to the serviced stores for removed items. By contrast, Ms. Devarie and other members of EMD's management team emphasized that the main responsibility of sales representatives is to sell EMD products. EMD Sales Director Freddy Urdaneta testified that being a sales representative requires leveraging relationships with store managers and knowledge about stores to make sales of additional products. Ms. Devarie and Mr. Urdaneta both framed their testimony in aspirational terms, emphasizing that the main limitation on sales representatives' ability to sell is their own initiative. Even so, Ms. Devarie acknowledged that she did not know how sales representatives allocate their time across the various stores on their routes. Nonetheless, Ms. Devarie testified that she believed that the compensation structure for EMD sales representatives complied with the FLSA because it was negotiated by the Union, and she relied on the advice of two accountants, and reviewed material from the Department of Labor in crafting the job responsibilities of sales representatives.

Although Plaintiffs acknowledged that it is possible for sales representatives to make their own sales of EMD products at independent stores, the parties disputed whether sales representatives can make their own sales of EMD products at chain stores, which comprise at least half of Plaintiffs' business. According to the testimony of Plaintiffs, as well as representatives from chain stores serviced by EMD, sales representatives are not permitted to sell directly to chain store managers. Instead, Plaintiffs introduced evidence that chain store managers are given "planograms," which are detailed diagrams indicating where to place items on shelves, and plans for non-planogrammed movable displays. In response, Defendants relied on the testimony of non-Plaintiff sales representatives and the *de bene esse* deposition of a former corporate buyer at a chain store to contend that sales representatives had abundant opportunities to make their own

3

sales to chain stores. The Court accredited Defendants' proffered testimony as establishing that there may be some divergence between chain store corporate policy and practice, such that chain store managers may occasionally be persuaded by sales representatives to diverge from the pre-set planograms and plans for movable displays.

In its Memorandum Opinion from March 19, 2021, the Court found that although Defendants established that Plaintiffs make their own sales at independent stores and might make some of their own sales at chain stores, Defendants failed to demonstrate by clear and convincing evidence that Plaintiffs' *primary* duty as sales representatives is making sales at either chain or independent stores. (ECF No. 219 at 13.) Accordingly, Defendants' failure to pay Plaintiffs overtime wages violated the FLSA because Defendants failed to prove that Plaintiffs constituted outside salespeople under the statutory exemption. (*Id.* at 14.) Further, the Court found that Plaintiffs were entitled to liquidated damages under the FLSA because Defendants did not establish that they acted in good faith, nor that they had objectively reasonable grounds for believing that Plaintiffs' compensation structure was FLSA-compliant. (*Id.* at 14–16 (citing 29 U.S.C. §§ 216(b), 260).) The Court declined, however, to extend the standard two-year statute of limitations under the FLSA to three years because it found that Defendants' statutory violation was not willful. (*Id.* at 16–17 (citing 29 U.S.C. § 255(a)).)

## II. *Legal Standard*

"Federal Rule of Civil Procedure 59(e) permits the district court to reconsider a decision in certain circumstances." *Hughley v. Matthew Carpenter, P.A.*, Civ. No. JKB-19-1950, 2020 WL 6703717, at \*1 (D. Md. Nov. 13, 2020) (quoting *Ross v. Early*, 899 F. Supp. 2d 415, 420 (D. Md. 2012)). In the Fourth Circuit, "Rule 59(e) motions can be successful in only three situations: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not

available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Zinkand v. Brown*, 478 F.3d 634, 637 (4th Cir. 2007) (internal quotation marks omitted).

With respect to the third situation, "[c]lear error or manifest injustice occurs where a court has patently misunderstood a party or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Wagner v. Warden*, Civ. No. ELH-14-0791, 2016 WL 1169937, at *3 (D. Md. Mar. 24, 2016) (internal citations and quotation marks omitted); *see also South Carolina v. United States*, 232 F. Supp. 3d 785, 799 (D.S.C. 2017) (defining "manifest injustice" as "[a] patent misunderstanding or misapprehension of the facts or arguments, so as to warrant a finding of manifest injustice," which "occurs only where such error was indisputably obvious and apparent from the face of the record").

Although Rule 59(e) "permits a district court to correct its own errors," it "may not be used [ ] to raise arguments which could have been raised prior to the issuance of the judgment, nor may [it] be used to argue a case under a novel legal theory that the party had the ability to address in the first instance." *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) (citing *Russell v. Delco Remy Div. of Gen. Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995)). Indeed, "reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly." *Id.* (internal citations and quotation marks omitted).

### III. *Analysis*

Defendants assert that the Court's decision to award liquidated damages under the FLSA constituted clear error and allege that amendment of the Judgment in relevant part is necessary "to prevent manifest injustice." (Mot. Amend at 6.) In their Motion to Amend, Defendants argue that they acted in good faith and had reasonable grounds for believing that Plaintiffs were exempt outside salespeople for the purposes of the FLSA. (*Id.* at 2.) Defendants assert that their good

faith is proven by "the Court's decision that EMD's conduct was not willful, the arms-length [sic] union negotiations, the consultation with accountants and the lack of complaints regarding overtime wages." (*Id.* at 6.) Further, Defendants contend that the applicability of the FLSA exemption presented a close question, and accordingly, "even in the absence of a reversal on the question of liability, there is more than sufficient evidence for this Court to find that EMD's actions were based on objectively reasonable grounds." (*Id.* at 24.)

Upon a court's finding that a defendant has violated the FLSA, the statute permits the recovery of both unpaid wages and "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). When a plaintiff prevails on a FLSA claim, awarding liquidated damages is "the norm." *Mayhew v. Wells*, 125 F.3d 216, 220 (4th Cir. 1997). A court may refuse to order liquidated damages only if the defendant meets her burden of demonstrating "to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that [s]he had reasonable grounds for believing that [her] act or omission was not a violation of the [FLSA]." 29 U.S.C. § 260. Absent a finding of the defendant's good faith, a court is required to award liquidated damages under the statute. Courts "place a 'plain and substantial burden' upon the employer" to make this statutory showing of good faith. *Mayhew*, 125 F.3d at 220 (quoting *Brinkley-Obu v. Hughes Training, Inc.*, 36 F.3d 336, 357 (4th Cir. 1994)). Determining whether an employer exercised good faith or had reasonable grounds for her belief that she was not in violation of the FLSA is an objective inquiry, 29 C.F.R. § 790.22, and "establishing either element is sufficient to satisfy the statute," *Calderon v. GEICO Gen. Ins. Co.*, 809 F.3d 111, 132 (4th Cir. 2015).

In order to demonstrate good faith, an employer may not simply show "ignorance of the prevailing law or uncertainty about its development." *Lockwood v. Prince George's Cnty.*, 58 F. Supp. 2d 651, 658 (D. Md. 1999), *aff'd, Lockwood v. Prince George's Cnty.*, 217 F.3d 839 (4th

Cir. 2000) (Table). Rather, an employer must "first take active steps to ascertain the dictates of the FLSA and then move to comply with them." *Id.*; *see also Garcia v. Frog Island Seafood, Inc.*, 644 F. Supp. 2d 696, 712 (E.D.N.C. 2009) (quoting *Roy v. Lexington,* 141 F.3d 533, 548 (4th Cir. 1998)) ("The good faith defense requires that an employer provide adequate proof that it did not take an 'ostrichlike' approach to the FLSA by 'simply remain[ing] blissfully ignorant of FLSA requirements.'"). Courts consider contextual factors that indicate an employer's objective good faith, including "the complexity of the issues, the history of the collective bargaining agreements, and the fact that the [defendant's] compensation practice has been known to the parties for many years and the subject of bargaining." *Koelker v. Mayor and City Council of Cumberland*, 599 F. Supp. 2d 624, 638 (D. Md. 2009).

Defendants fall short of meeting their heavy burden of demonstrating clear error or manifest injustice in the Court's award of liquidated damages in this case. In their Motion to Amend, Defendants largely re-brief arguments that they made at trial, and while Defendants identify factors that are *relevant* to a finding of good faith or objectively reasonable grounds, they fail to effectively address the Court's key conclusion that Defendants did not investigate the actual daily tasks of sales representatives, and that Ms. Devarie's testimony revealed her lack of knowledge as to what sales representatives' daily responsibilities actually entail. (*See* ECF No. 219 at 15.)

In their Reply, Defendants argue both that "Ms. Devarie's purported failure to know Plaintiffs' precise job duties is not dispositive," and that even if Defendants were required to investigate the job responsibilities of sales representatives, Ms. Devarie had the requisite knowledge regarding sales representatives' daily tasks. (*See* Reply to Mot. Amend at 2–5, ECF No. 259.) The Court disagrees with both contentions. First, Defendants mischaracterize the

7

Court's analysis as hinging on whether Ms. Devarie knew "the precise job duties of Plaintiffs at all times." (*Id.* at 2.) To the contrary, the Court found, based on Ms. Devarie's testimony at trial, that she could describe the sales representatives' duties only at a high degree of generality, and that she did not know how often sales representatives actually made their own sales at chain stores, let alone more specific details regarding sales representatives' schedules. Indeed, Defendants cite no authority for the proposition that an employer can be found to have acted in good faith or had objectively reasonable grounds for belief that her conduct complied with the FLSA where she did not have actual knowledge of her employees' responsibilities.

Further, Defendants do not establish that the Court's conclusion that Ms. Devarie did not know the actual job responsibilities of sales representatives was based on any misapprehension of fact. *See South Carolina v. United States*, 232 F. Supp. 3d at 799 (emphasis added) (defining "manifest injustice" as "[a] patent misunderstanding or *misapprehension of the facts* or arguments"). Defendants argue that Ms. Devarie knew the actual job responsibilities of sales representatives because she was EMD's first sales representative and because her trial testimony established that the mission of sales representatives at EMD is to sell. (*Id.* at 4.) Defendants do not explain how Ms. Devarie's knowledge of her own role when she founded EMD in 1995 would inform her as to the responsibilities of the thirty-five sales representatives now employed by EMD more than twenty-five years later. Indeed, as Ms. Devarie testified at trial, EMD did not even begin servicing chain stores until 1997. (Opp'n to Mot. Amend Ex. A at 14–15, ECF No. 247-1.) Additionally, as the Court pointed out in its March 19 Memorandum Opinion, Ms. Devarie's testimony regarding the *mission* of sales representatives was largely aspirational in nature and did not establish the *actual* responsibilities of sales representatives. (*See* ECF No. 219 at 15.)

In short, Defendants do not identify the requisite clear error or manifest injustice to set aside the Court's finding that Defendants did not demonstrate good faith or objectively reasonable grounds for believing that their conduct complied with the FLSA. Absent this showing, the Court reiterates that it is required to award Plaintiffs liquidated damages.

### IV.    *Conclusion*

For the foregoing reasons, an Order will issue denying Defendants' Motion to Alter or Amend Judgment (ECF No. 242).

DATED this 12th day of July, 2021.

BY THE COURT:

_____/s/_____
James K. Bredar
Chief Judge
